**James CASNER, Mary Perkins, James Schopp et al., Petitioners,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.

Decided May 9, 1995.

**2.** 42 Pa.C.S. §§ 8521–8528.

William T. Fleming, for petitioners.

William H. Haller, for respondents.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Presently before this Court is the motion for judgment on the pleadings, filed pursuant to Pa.R.C.P. No. 1034 of American Federation of State, County and Municipal Employees, AFL–CIO, Council 13 (AFSCME) in response to the cause of action brought by James Casner (Casner), James Ross (Ross), Charles Smith (Smith), Mary Perkins (Perkins), James Schopp (Schopp), William Covert (Covert), John Russ (Russ) and Larry Freeburg (Freeburg), (collectively, Petitioners). This case was transferred by stipulation of the parties from the Court of Common Pleas of Huntingdon County (common pleas court) and is now before us in our original jurisdiction pursuant to the amended petition for review filed by Petitioners on November 9, 1993, seeking equitable relief in the form of an order compelling AFSCME to submit their grievances to arbitration.

Petitioners are eight corrections officers for the Commonwealth at the State Correctional Institution at Huntingdon (SCI–Huntingdon) and are represented for the purpose of collective bargaining by AFSCME. Maintaining that they performed the duties of higher ranking corrections officers, for which they received the lower pay and seniority rate of correction officer trainees, Petitioners brought this suit against AFSCME and the Commonwealth, Department of Corrections on May 14, 1993, in the common pleas court. The parties then entered into a stipulation transferring the matter to this Court.

In their three count complaint, Petitioners sought monetary damages and equitable relief based on the assertion that AFSCME breached its duty of fair representation as their collective bargaining agent and that AFSCME conspired with their Commonwealth employer in doing so. More specifically, in Counts I and II of their complaint Petitioners originally sought judgment in their favor against AFSCME in the form of both equitable relief and monetary damages and in Count III of their complaint, Petitioners sought judgment against SCI–Huntingdon. Both AFSCME and the Commonwealth raised preliminary objections in the nature of a demurrer to Petitioners' complaint and on October 21, 1993, the Honorable Dan Pellegrini entered an order granting those preliminary objections. Judge Pellegrini dismissed Count III of Petitioners' complaint in its entirety, but retained the Commonwealth as an indispensable party so that the remedy of arbitration, if warranted, may be completely and adequately enforced. He dismissed Counts I and II of Petitioners' complaint with leave to amend, concluding that Petitioners could not seek monetary damages from AFSCME and that their sole remedy is an order compelling AFSCME to submit the grievances to arbitration.

Petitioners amended their complaint pursuant to Pa.R.C.P. No. 1033 alleging that they have no adequate remedy at law.[1] They also amended their prayer for relief pursuant to Pa.R.C.P. No. 1528 and they now seek only the above-mentioned equitable relief in

---

1. We note that Petitioners have appropriately retitled their "complaint" a "petition for review" but we refer to it as a "complaint" to avoid confusion.

the form of an order compelling AFSCME to submit grievances on their behalf to arbitration in accordance with the terms and conditions of the applicable collective bargaining agreement. In response, AFSCME raises a motion for judgment on the pleadings asserting the affirmative defense of statute of limitations.

## MOTION FOR JUDGMENT ON THE PLEADINGS

For the purpose of ruling on AFSCME's motion for judgment, the allegations made in the non-movant Petitioners' pleadings are the facts of the case. The facts alleged in Petitioners' complaint are as follows. In early 1985, Petitioners, Casner, Ross and Smith (Group I) learned that AFSCME was filing grievances for correction officer trainees who were performing the duties of higher ranking officers and not receiving the appropriate adjustments in pay and seniority. The Group I Petitioners did not file grievances allegedly because of advice from AFSCME regarding the effect of grievance awards on the repayment of unspecified benefits received from the veterans administration. Perkins, Schopp, Covert, Russ and Freeburg, the five remaining Petitioners (Group II), allege that AFSCME requested them to provide information for AFSCME to pursue grievances to correct the ongoing wage and seniority discrimination and that AFSCME told them that grievances would be filed on their behalf. Between 1985 and 1987 AFSCME successfully filed and processed twenty-four grievances for correction officer trainees who were situated similarly to Petitioners. None of the Petitioners were included in these grievances. All of the twenty-four correction officers' grievances were successful and they were awarded pay and seniority adjustments.

Conversations concerning Petitioners' circumstances allegedly occurred between Petitioners and AFSCME representatives at SCI–Huntingdon from 1988 to 1990 regarding why grievances had not been filed on Petitioners' behalf. It is asserted that AFSCME responded that it erred by inadvertently failing to file grievances, or by denying that Petitioners requested grievances

be filed. The pleadings also reflect that Petitioners were allegedly told by the AFSCME representatives during this period that nothing could be done to correct the failure to file. Elsewhere, it is asserted that the grievances were discussed at various AFSCME union meetings from 1985 to 1989 and that AFSCME representatives denied making assurances that grievances would be filed.

In 1990, allegedly without the knowledge of Petitioners, AFSCME filed grievances on behalf of eleven correction officer trainees including four of the Petitioners; Casner, Ross, Smith and Schopp. These Petitioners maintain they did not receive any information concerning any decision, award or disposition of these grievances despite requests for such information. In 1991, Petitioners secured the assistance of legal counsel in an attempt to amicably resolve these matters with AFSCME. Petitioners' counsel contacted AFSCME's counsel throughout 1991 and 1992 seeking information regarding the grievances and to obtain an explanation why the Petitioners were not represented. It is alleged that counsel for AFSCME informed Petitioners' counsel that the 1990 grievances were never processed and added that any grievance filed in 1990 regarding wage and seniority discrimination by the Commonwealth employer which occurred in 1984 or 1985 was untimely. By letter dated September 10, 1991, counsel for AFSCME wrote that AFSCME did not prosecute grievances on Petitioners' behalf and specifically stated that it was counsel's understanding after contacting the local union that a grievance was filed for every officer who requested such action.

On August 4, 1992, Petitioners, through counsel, filed grievances seeking wage and seniority benefits. There was no response by either SCI–Huntingdon or AFSCME to these grievances. On December 22, 1992, Petitioners filed an unfair labor practices charge with the Pennsylvania Labor Relations Board against AFSCME and SCI–Huntingdon which was dismissed on January 15, 1993, for lack of subject matter jurisdiction because Petitioners' charge did not contain necessary allegations that SCI–Huntingdon discriminated against Petitioners for engag-

ing in any activity protected by the Public Employe Relations Act (PERA).[2]

■ Pa.R.C.P. No. 1034 provides that "after pleadings are closed, but within such time as not to delay trial, any party may move for judgment on the pleadings." The factual recitation above represents the facts only as presented in Petitioners' complaint because when ruling on a motion for judgment on the pleadings in our original jurisdiction we must view all of the opposing party's allegations as true and only those facts which have been specifically admitted may be considered. *Department of Public Welfare v. Joyce,* 131 Pa.Commonwealth Ct. 621, 571 A.2d 536 (1990). We must consider only the pleadings themselves and any documents properly attached. *Kelly v. Nationwide Insurance Co.,* 414 Pa.Superior Ct. 6, 606 A.2d 470 (1992). A motion for judgment on the pleadings may summarily dispose of a case only when there exists no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Giddings v. Tartler,* 130 Pa.Commonwealth Ct. 175, 567 A.2d 766 (1989).

At this stage of the litigation there are two main issues for our consideration. We must first decide what statute of limitations governs Petitioners' claims against their collective bargaining representative for breach of the duty of fair representation. Second, we must consider whether Petitioners' are barred by that limitations period.

### *FOUR MONTH STATUTE OF LIMITATIONS*

■ AFSCME contends that this action is barred by the four month statute of limitations contained in Section 1505 of PERA, 43 P.S. § 1101.1505. AFSCME asserts that this is the appropriate limitations period because Petitioners' duty of fair representation claim arises out of AFSCME's status as Petitioners' exclusive representative for collective bargaining and is akin to an unfair labor practice claim under PERA. We do not agree.

■ Union members may not file unfair labor practice claims against their bargaining

agents for failure to submit grievances. *Ziccardi v. Commonwealth of Pennsylvania, Department of General Services,* 500 Pa. 326, 456 A.2d 979 (1982). A collective bargaining representative's refusal to file grievances on an employee's behalf does not fall under any of the categories of unfair labor practices enumerated in Section 1201(b) of PERA, 43 P.S. § 1101.1201(b). Apparently the Legislature did not contemplate or foresee an action by a union member against the union alleging a breach of the duty of fair representation when enacting PERA. Nevertheless, our Pennsylvania Supreme Court recognized the existence of such a cause of action in *Falsetti v. United Mine Workers,* 400 Pa. 145, 161 A.2d 882 (1960). Because the violation of the duty of fair representation is a civil claim that does not arise under PERA the statute of limitations period of that act does not apply.

Petitioners cite *Martino v. Transport Workers' Union of Philadelphia, Local 234,* 505 Pa. 391, 480 A.2d 242 (1984), in support of their position. In *Martino,* our Pennsylvania Supreme Court created a narrow cause of action emanating from PERA when it acknowledged the existence of the right of an employee to file an action in equity against his employer where that employer actively participated and conspired with a union to deny employee rights bargained for and contained in a collective bargaining agreement. *See, Reisinger v. Department of Corrections,* 130 Pa.Commonwealth Ct. 585, 568 A.2d 1357 (1990). In the present action, Petitioners seek to compel their collective bargaining representative to submit their grievances to arbitration. Petitioners' right to file an action in equity against their employer is not at issue. Judge Pellegrini issued a memorandum opinion and order in this matter referred to earlier in this opinion dismissing any complaint against the Commonwealth employer. Citing *Reisinger* as authority, Judge Pellegrini retained the Commonwealth as a party so that the remedy of arbitration may be available.

■ The court in *Martino* sought to prevent employers from acting in concert with unions against employees. No such

**2.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

conspiracy is alleged here. In his memorandum opinion Judge Pellegrini dismissed portions of Petitioners' first complaint because they failed to state a cause of action for conspiracy. Petitioners made only general allegations of conspiracy between AFSCME and the Commonwealth as employer and proffered no factual averments to establish the elements of the cause of action. Pursuant to Pa.R.C.P. No. 1019(a), a complaint setting forth a cause of action for civil conspiracy must allege material facts which will either directly or inferentially establish the elements of conspiracy. *Baker v. Rangos*, 229 Pa.Superior Ct. 333, 324 A.2d 498 (1974). Because Petitioners failed to state a cause of action in conspiracy, various portions of Petitioners' complaint requesting monetary damages and the entire count against the Commonwealth were properly dismissed.

■ Absent a claim that there was a conspiracy between the union and the employer, the sole remedy for a breach of a union's duty of fair representation is an order compelling arbitration. *Speer v. Philadelphia Housing Authority*, 111 Pa.Commonwealth Ct. 91, 533 A.2d 504 (1987). Petitioners' cause of action arises as a tort claim in equity against AFSCME for the alleged failure to represent Petitioners. Conspiracy is not alleged and *Martino* is not sound precedent for the cause of action currently before us. It is not appropriate to apply a limitations period that may pertain to actions in equity against employers in this case, especially since the court in *Martino* was not considering the statute of limitations. We conclude that the present controversy is not an action arising under PERA and we hold the limitations period set forth in Section 1505 of PERA is not the appropriate statute of limitations.

## SIX YEAR STATUTE OF LIMITATIONS

■ Petitioners assert that because the Legislature has not adopted any specific statute of limitations for duty of fair representation cases the six year limitations period catch-all provision of 42 Pa.C.S. § 5527, should apply. "Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded

from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. § 5527.

We believe the catch-all provision is not applicable. Rather, a duty of fair representation claim against a union seeking equitable relief in the form of an order compelling arbitration, is most like a legal malpractice action.

## TWO YEAR STATUTE OF LIMITATIONS

■ The two year statute of limitations as set forth in 42 Pa.C.S. § 5524 for a violation of the duty of fair representation claim against a union seems most appropriate. In their dissent in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), United States Supreme Court Justices John Paul Stevens and Sandra D. O'Connor reasoned that a malpractice action against an attorney provides the closest analogy to an employee suit against a collective bargaining representative for breach of the duty of fair representation. We agree for the following reasons and will apply the two year statute of limitations.

■ A collective bargaining agent is guilty of unfairly representing an employee when refusal to submit a grievance is due to arbitrariness, discrimination or bad faith. *Pennsylvania Labor Relations Board v. Eastern Lancaster County Education Association*, 58 Pa.Commonwealth Ct. 78, 427 A.2d 305 (1981). A legal malpractice plaintiff must prove: 1) the employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff. *McHugh v. Litvin, Blumberg, Matusow & Young*, 525 Pa. 1, 574 A.2d 1040 (1990). A plaintiff filing an action based on the duty of fair representation carries a heavier burden than a plaintiff in a legal malpractice claim. However, the two actions arise from the basic notion that when a negotiating representative fails to discharge a duty and causes an actual loss to the client, liability should fol-

low. This liability flows from the representative's dereliction of duty.

Because the actions are substantially similar they warrant employing the same statute of limitations. Section 5524 of the Judicial Code provides in pertinent part that "[a]ny ... action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct ..." must be commenced within two years "unless subject to another limitation specified in this subchapter." 42 Pa.C.S. § 5524(7). In order to prevail Petitioners must show that AFSCME acted in bad faith, or exhibited arbitrariness or discrimination in failing to file grievances on Petitioners' behalf. Petitioners allegedly sustained injury by not having their grievances submitted to arbitration by their collective bargaining agent and allege that AFSCME breached its duty to fairly represent them, which, if proved, constitutes tortious conduct. The two year limitation in 42 Pa.C.S. § 5524 is appropriate.

## APPLICATION OF THE TWO YEAR STATUTE OF LIMITATIONS

We now turn our attention to whether the statutory period has run.

> As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period.

*Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). In Pennsylvania, "the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered." *Bailey v. Tucker*, 533 Pa. 237, 252, 621 A.2d 108, 115 (1993). "[D]etermining when a cause of action arises or accrues is to establish when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Association of Pennsylvania State College and University Facilities*, 504 Pa. 92, 99, 470 A.2d 482, 485 (1983). Therefore, the statute of limitations begins to run as soon as the Petitioners' right to file and maintain a suit against AFSCME arose.

■ Petitioners contend that AFSCME committed a continuing violation and that their causes of action are ongoing, recommencing with each pay period because Petitioners sustain losses of pay and benefits with each pay check. We find this position unpersuasive. Adopting this rationale would effectively render the limitation period for any cause of action alleging loss of payment meaningless when the payment is received on a regular basis. "[T]he purpose of a statute of limitations is to bar stale claims and avoid problems of proof arising from stale memories." *Garcia v. Community Legal Services Corp.*, 362 Pa. Superior Ct. 484, 493, 524 A.2d 980, 984 (1987) *appeal denied*, 517 Pa. 623, 538 A.2d 876 (1988). Accepting Petitioners' continuing violation theory would hinder and frustrate the ultimate aim of limitations periods. We hold that Petitioners' causes of action are not continuing.

■ A corollary issue concerns the criteria which must be established to bring suit for a breach of the duty of fair representation. "[B]efore a court can order arbitration between an employer and a union an aggrieved employee must prove that the union acted in bad faith...." *Reisinger*, 130 Pa.Commonwealth Ct. at 593, 568 A.2d at 1361. A union is guilty of unfair representation if it discriminates against certain employees or arbitrarily and in bad faith refuses to submit a grievance to arbitration. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Here, because we have numerous Petitioners in allegedly different circumstances it is imperative to establish when the clock began to tick on Petitioners' claims. We hold that in this equity action the two year statute of limitation began to run when AFSCME informed each Petitioner it would not file their grievance against the employer, or when any Petitioner discovered that AFSCME misled them when they were informed a grievance was or would be filed. Put another way, as soon as Petitioners knew that they were victims of the employer's unfair labor practice and they had reason to believe that AFSCME, their collective bargaining agent,

arbitrarily or in bad faith refused to file their grievances, the two year statute of limitations began to run.

There are two distinct groups of Petitioners. As stated earlier, Group I consists of Casner, Ross and Smith who were told that grievances were not filed on their behalf. Group II consists of Perkins, Schopp, Covert, Russ and Freeburg who were allegedly misled by AFSCME regarding the filing of their grievances. We will discuss separately whether each group's claims are stale.

### GROUP I

■ AFSCME filed and processed grievances in favor of twenty-four correction officers from 1985 to 1987. Petitioners acknowledge that "[i]n early 1985, Petitioners Casner, Ross and Smith [Group I] learned that AFSCME was filing grievances...." Amended Petition for Review, November 9, 1993, at 3; Paragraph No. 10. They further contend that they "did not participate in the grievances based on the wrongful advice of AFSCME...." *Id.;* Paragraph No. 11. By these pleadings, the Group I Petitioners admit that they knew in 1985 that they could arbitrate their wage and seniority status, and that AFSCME refused to file grievances on their behalf. Because their causes of action against AFSCME could and should have been pursued in 1985 the statute of limitations has long since run.

### GROUP II

■ The pleadings reflect that the Group II Petitioners allege they were ignorant of AFSCME's breach from 1986 to 1987. In Paragraph 12 of the complaint, Petitioners assert that "[f]rom 1986 to 1987, Petitioners Perkins, Schopp, Covert, Russ and Freeburg [Group II] were approached by AFSCME representatives to provide information for grievances to correct ongoing wage and seniority discrimination ... and were told that grievances would be filed on their behalf." *Id.;* Paragraph No. 12.

From the pleadings it is also apparent that by 1990 the Group II Petitioners were aware of the fact that AFSCME did not file their grievances. "At various times and dates

from 1988 to 1990, Petitioners ... questioned AFSCME representatives ... about the reasons why AFSCME had not filed grievances on their behalf...." *Id.* at 4; Paragraph No. 16. AFSCME allegedly responded by stating either that Petitioners failed to request that grievances be filed on their behalf, or that the union inadvertently failed to include Petitioners' in the grievances that were filed. According to Petitioners' complaint, the union stated that "there was nothing that could be done for Petitioners to correct the ... failure." *Id.;* Paragraph No. 17. In order to question the union about why grievances had not been filed Petitioners must have known that grievances were in fact not filed. Petitioners also allege in the complaint that "[d]iscussions concerning ... ongoing grievances occurred at various AFSCME union meetings from 1985 to 1989 at which times AFSCME representatives denied making certain statements and assurances that grievances would be filed...." *Id.;* Paragraph No. 18. We can infer from this that the Petitioners in attendance at those union meetings knew that AFSCME was not pursuing their grievances. Despite the allegations in their complaint, Petitioners assert in their responding brief that their causes of action were not cognizable before they received AFSCME's counsel's letter of September 10, 1991. However, Petitioners do not make this assertion in their complaint and it is apparent from the rest of their pleadings that the Group II Petitioners knew at some point between 1988 and 1990 that AFSCME was not going to pursue their grievances.

### CONCLUSION

Petitioners filed a complaint in this matter in the common pleas court on May 14, 1993. The Group I Petitioners did not institute the present action until more than two years after 1985, at which time they knew to pursue their causes of action. The Group I Petitioners' claims are no longer viable, the two year statute of limitations has run. *See* 42 Pa.C.S. § 5524(7). It is clear from the pleadings, and documents attached, that the Group II Petitioners knew by 1990 that AFSCME did not file their grievances, their

claims are also barred by the two year statute of limitations.

AFSCME's motion for judgment on the pleadings is granted and Petitioners' claims pursuant to their petition for review are dismissed.

### ORDER

AND NOW, this 9th day of May, 1995, it appearing that the statute of limitations has run, the motion for judgment on the pleadings made by the American Federation of State, County and Municipal Employees, AFL–CIO, Council 13, et al. in the above-captioned matter is granted and the petition is dismissed.