The PENNSYLVANIA SOCIAL SER-
VICES UNION and The Service Employ-
ees International Union, Appellants,

v.

Joseph T. LYNN.

Commonwealth Court of Pennsylvania.

Submitted April 26, 1996.
Decided June 4, 1996.
Reargument Denied July 3, 1996.

Bruce M. Ludwig, for Appellants.

Joseph T. Lynn, Pro Se, Appellee.

Michael H. Roth, for Amicus Curiae, De-
partment of Public Welfare.

Amy L. Rosenberger, for Amicus Curiae, Council 13, American Federation of State, County and Municipal Employees, AFL–CIO.

Before SMITH, PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania Social Services Union (PSSU) and the Service Employees International Union (International Union), collectively, the Unions, appeal from a decision of the Court of Common Pleas of Lackawanna County (trial court) that denied their motion under Pennsylvania Rule of Civil Procedure 1032(b) [1] to dismiss or transfer an action for unfair representation filed by Joseph T. Lynn (Lynn).

Lynn was employed by the Commonwealth of Pennsylvania, Department of Public Welfare (Commonwealth), as a claims settlement agent. In that position, Lynn was required to recover money owed to the Commonwealth as a result of the Commonwealth's liens or judgments for the payment of welfare. PSSU was the certified collective bargaining agent of a unit that included Lynn's position and was a party to a collective bargaining agreement with the Commonwealth that provided for the filing of grievances which PSSU may take to final and binding arbitration.

Lynn was discharged from his employment on April 21, 1986, because he allegedly provided false information to the news media regarding purported illegalities and wrongdoing on the part of the Commonwealth and its management officials. Lynn released to the media copies of criminal complaints sworn out by him that alleged that the Commonwealth engaged in theft by deception and other crimes due to its implementation of a policy that provided for the collection of interest on welfare liens.[2] Additionally, believ-ing that the Commonwealth's policy was illegal, Lynn refused to follow that policy.

·After being discharged, Lynn contacted PSSU and requested that a grievance be filed and pursued to arbitration. PSSU filed a grievance with the Commonwealth on April 25, 1986, seeking Lynn's reinstatement as well as compensation for his losses. After the Commonwealth denied the grievance, PSSU brought the matter to arbitration. The parties represented at the arbitration hearing were PSSU and the Commonwealth; over his requests, Lynn's personal attorney was specifically not permitted to participate in PSSU's presentation of the grievance to the arbitrator. Additionally, because no transcript of the hearing was maintained, Lynn requested to make a personal tape recording of the proceedings. The arbitrator, ruling in favor of the Commonwealth's objections, denied Lynn's request.

At the arbitration hearing, PSSU alleged that the Commonwealth's termination of Lynn was in violation of the collective bargaining agreement. PSSU argued that Lynn's discharge was without cause, and that it constituted unlawful discrimination against Lynn for his activities as a PSSU steward. PSSU offered evidence to show that Lynn had a legitimate basis to challenge the Commonwealth's welfare lien policy and that his statements to the news media were not false. The Commonwealth argued that it was within its prerogative to instruct its staff to collect interest on welfare liens and that Lynn's public comments against the Commonwealth were false and disruptive to the work place harmony.

On October 13, 1986, the arbitrator denied PSSU's grievance, finding that Lynn's discharge was not in violation of the collective bargaining agreement. The arbitrator concluded that Lynn's termination was not the result of anti-union animus, but instead, re-

---

1. Pa. R.C.P. 1032(b) provides that:
   Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

2. The Office of the Attorney General refused to issue a criminal complaint based upon the allegations of Lynn's private criminal complaints. That decision was affirmed by the trial court in a separate proceeding.

sulted from his decision to take his dispute with the Commonwealth to the news media.

PSSU subsequently notified Lynn of the arbitrator's decision and informed him that it was not going to appeal that decision because there were insufficient grounds for an appeal. Lynn contacted the International Union, requesting that it instruct PSSU to appeal the arbitration award. Although the International Union responded to Lynn's request, it did not intervene in PSSU's decision not to appeal the arbitrator's award.

On October 17, 1988, Lynn filed the present action against the Unions, alleging that PSSU breached its duty of fair representation towards him. Lynn alleges that PSSU breached its duty by failing to appeal the arbitration award, by not providing him with counsel or not permitting his private counsel to appear at the arbitration hearing, by failing to hire a court stenographer for the arbitration hearing, and by not presenting certain testimony at the arbitration hearing. Contending that he was wrongfully discharged by the Commonwealth because he disagreed with its purportedly illegal collection policy, Lynn averred in his complaint that the Unions "have sided with management on these issues which lead to [his] firing and have blatantly failed to protect [his] interests." Additionally, Lynn alleged that PSSU's conduct during the arbitration hearing facilitated his termination by the Commonwealth. In his complaint, Lynn requests that the Unions be directed to re-arbitrate his termination from employment *nunc pro tunc*, as well as pay his damages, lost wages and legal expenses.

The Unions then filed preliminary objections to Lynn's complaint, contending in part that Lynn failed to join a necessary party,

the Commonwealth.[3] The Unions argued that, because Lynn alleged that his discharge was wrongful, and because he was requesting re-arbitration of his termination, the Commonwealth was required to be joined in the action. The trial court denied the preliminary objection without prejudice, stating that the Commonwealth would be an indispensable party only if the Unions breached their duty of fair representation and the trial court orders re-arbitration of the grievance.

After the Unions filed an answer with new matter to the complaint, Lynn filed a response to the new matter. In that response, Lynn made allegations of collusion, conspiracy and corruption on the part of the Unions in siding with the Commonwealth. Lynn also alleged that the Unions aided and abetted the Commonwealth's wrongful termination of him by their actions before and after his termination. Lynn repeated these allegations in his responses to the Unions' interrogatories and in his pretrial statement.

Prior to trial, the Unions filed a motion to dismiss or transfer the matter, alleging that the trial court lacked jurisdiction because the Commonwealth was an indispensable party. The Unions requested that the Commonwealth be joined as a party and that the matter be transferred to this Court's original jurisdiction. Alternatively, if the Commonwealth could not be joined, the Unions requested the trial court to dismiss the action. After denying the Unions' motion, the trial court found that the issue of whether the Commonwealth was an indispensable party was a controlling question of law, and permitted the Unions to appeal its interlocutory order pursuant to 42 Pa.C.S. § 702(b).[4] This Court subsequently granted permission to appeal to the Unions.[5]

3. Although the Unions raised other preliminary objections, they are not relevant to the issue presently before this Court.

4. 42 Pa.C.S. § 702(b) provides that:
  When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materi-

ally advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

5. The appeal was granted three days before the scheduled trial date of the action. At that time, it appeared that Lynn was still requesting a *nunc pro tunc* re-arbitration of his grievance. Lynn's abandonment of that claim for relief did not appear of record until his motion for reconsideration and his brief were filed with this Court.

After this Court granted permission to appeal, Lynn filed a motion for reconsideration of that decision and for emergency relief. In that motion, Lynn conceded that reinstatement by the Commonwealth to his position is no longer possible because the Unions did not seek to join the Commonwealth as a defendant to enforce its obligation under the collective bargaining agreement prior to the expiration of the applicable statute of limitations.[6] Lynn also made a similar statement in his brief before this Court. Lynn has conceded that there is no basis for an action against the Commonwealth and indicates that he is seeking no relief from the Commonwealth. Instead, Lynn states that his remaining cause of action lies solely against the Unions for the alleged breach of their duty of fair representation.

Before this Court, the Unions contend that the trial court erred in declining to find that the Commonwealth is an indispensable party to Lynn's action. The Unions argue that, because Lynn is requesting the trial court to order them to re-arbitrate his grievance *nunc pro tunc*, the Commonwealth must be joined as an indispensable party in order to ensure that such arbitration can occur if so ordered by the trial court.

As a general rule, a public employee has no right to sue his or her employer for wrongful discharge where the union has denied the employee fair representation by refusing to bring a grievance to arbitration. *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982). Only a party to the collective bargaining agreement, the union, has the right to pursue a wrongful discharge action against the employer. *Id.* If the union fails to do so, and that refusal amounts to a breach of the union's duty of fair representation, then the sole remedy available to the employee is to bring an action in equity against the union seeking an order to compel arbitration of the underlying grievance. *Id.; Martino v. Transport Workers' Union of Philadelphia*, 505 Pa. 391, 480 A.2d 242 (1984).

In such cases, however, the employer approaches the status of an indispensable party to the litigation in the sense that the dispute cannot be finally resolved without its participation. *Id.; Runski v. AFSCME, Local 2500*, 142 Pa.Cmwlth. 662, 598 A.2d 347 (1991), *aff'd*, 537 Pa. 193, 642 A.2d 466 (1994); *Reisinger v. Department of Corrections*, 130 Pa.Cmwlth. 585, 568 A.2d 1357 (1990); *Speer v. Philadelphia Housing Authority*, 111 Pa. Cmwlth. 91, 533 A.2d 504 (1987). The public employer is assigned the status of an indispensable party in an unfair representation action solely for the purpose of affording the employee an adequate remedy; i.e., reinstatement or arbitration. *Runski, supra; Reisinger, supra*. If the employee is not seeking reinstatement or arbitration, and is only seeking damages from the union for an alleged breach of its duty of fair representation, then the employer does not approach the status of an indispensable party.

In the present case, although Lynn initially was seeking a *nunc pro tunc* re-arbitration of his grievance and reinstatement into his position, he has subsequently conceded that such relief is not possible. Given Lynn's specific statements that he seeks no relief from the Commonwealth, and instead, is requesting damages only from the Unions, the Commonwealth cannot be considered an indispensable party to Lynn's unfair representation action against the Unions.[7]

Accordingly, the decision of the trial court refusing to join the Commonwealth as an indispensable party is affirmed.

### ORDER

AND NOW, this 4th day of June, 1996, the order of the Court of Common Pleas of Lack-

---

6. *See* 42 Pa.C.S. § 5527 (six-year statute of limitations).

7. The Unions also argue that, because Lynn alleges a conspiracy between the Unions and the Commonwealth, and because the Commonwealth has numerous interests that could be affected by Lynn's action, the Commonwealth is clearly an indispensable party to the present litigation. This contention, however, disregards the fact that Lynn's action is only against the Unions. Lynn did not name the Commonwealth as a defendant in his action and is not seeking any relief from the Commonwealth. As such, the Commonwealth's rights and interests cannot be affected by any decision on the merits by the trial court. Therefore, the Commonwealth is not an indispensable party based upon this ground.

awanna County at No. 88–CV–5357, dated October 12, 1995, is affirmed. The matter is remanded to the trial court.

Jurisdiction relinquished.