**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| PENNY GUSTAFSON, | : | No. 24 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | February 20, 2024, at No. 1298 CD |
| v. | : | 2022, reversing and remanding the |
| | : | Order of Cambria County Court of |
| | : | Common Pleas entered February |
| AMERICAN FEDERATION OF STATE, | : | 11, 2022, at No. 2021-3223. |
| COUNTY, AND MUNICIPAL EMPLOYEES, | : | |
| COUNCIL 13; AMERICAN FEDERATION | : | ARGUED: April 10, 2025 |
| OF STATE, COUNTY, AND MUNICIPAL | : | |
| EMPLOYEES, DISTRICT COUNCIL 83; | : | |
| AND AMERICAN FEDERATION OF | : | |
| STATE, COUNTY, AND MUNICIPAL | : | |
| EMPLOYEES, LOCAL 2047, | : | |
| | : | |
| Appellants | : | |

**OPINION**

**JUSTICE MUNDY**                    **DECIDED: JANUARY 21, 2026**

A public employee sued the union representing her bargaining unit, alleging the union breached its duty of fair representation by discriminatorily mishandling her grievance against her public employer. In this appeal by allowance, we are tasked with discerning whether, under such circumstances, the employee may seek damages from the union for its breach or whether her remedy is limited to an order compelling the union to take the grievance to arbitration *nunc pro tunc*. After careful consideration, we determine, under the laws of this Commonwealth, that a public employee's remedy under

such circumstances is limited to an order directing arbitration and, therefore, reverse the order of the Commonwealth Court.

## I. Background

Appellee Penny Gustafson ("Gustafson") is employed by the Pennsylvania Department of Human Services ("the Commonwealth") as a Residential Services Aid at Ebensburg Center, a licensed facility that provides support to people with intellectual disabilities. As part of her employment, she is a member of a bargaining unit represented by Appellants American Federation of State, County, and Municipal Employees ("AFSCME") Council 13 ("Council 13"), AFSCME District Council 83 ("District Council 83"), and AFSCME Local 2047 ("Local 2047") (collectively "AFSCME" or "the Unions").[1] Gustafson was previously an AFSCME member but resigned her membership in June 2019. Even though she is no longer a member of AFSCME, AFSCME remains Gustafson's exclusive representative for purposes of the Public Employe Relations Act ("PERA")[2], and Gustafson continues to be subject to the provisions of a collective bargaining agreement between AFSCME and the Commonwealth, which governs the terms and conditions of her employment.[3]

---

[1] As discussed *infra,* the trial court granted AFSCME's preliminary objections. Therefore, we must "accept as true all well-pleaded, material, and relevant facts alleged in [Gustafson's] complaint and every inference that is fairly deducible from those facts." *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020). Accordingly, we deduce the relevant factual background from Gustafson's complaint.

[2] Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §§ 1101.101, *et seq.*

[3] For the purposes of PERA, Gustafson is a "public employe," 43 P.S.§ 1101.301(2), and the AFSCME Appellants are all "employe organizations," 43 P.S. § 1101.301(3), that act as Gustafson's exclusive representative, 43 P.S. § 1101.606.

In October 2019, Gustafson was "taken off the floor,"[4] purportedly for an investigation. No investigation, however, was conducted and Gustafson was returned to her normal duties. During her three weeks "off the floor," Gustafson lost the opportunity to work overtime hours and overtime equalization due to her inability to accept such opportunities.[5]

On or about October 30, 2019, Gustafson requested AFSCME file a grievance related to her time "off the floor" and the lack of investigation, which Local 2047 shop steward Doug Myers ("Myers") filed on her behalf. After the grievance was filed, Gustafson inquired with Myers on its status at least once a month, but he failed to provide her any information other than to state the grievance process was delayed due to the coronavirus pandemic and would take a while to resolve.

Then, in June 2020, Gustafson called District Council 83 to inquire on the status of her grievance. Within five days of this phone call, Myers provided Gustafson with a grievance resolution letter, dated March 3, 2020, which set forth, in relevant part, the following: "[The] Department offers the following in final resolution of the above case: Grievant was equalized." Complaint, 9/22/2021, Exhibit A; R.R. at 19a. The time period for Gustafson to appeal the grievance resolution letter or otherwise challenge the resolution of her grievance had passed by the time the letter was provided to her by Myers. Gustafson was displeased with the resolution of her grievance because, in her opinion, the resolution did not restore or repay her lost overtime hours or properly calculate her equalization.

---

[4] At Ebensburg Center, when employees are "taken off the floor" due to an investigation, they are still considered to be working but do not have any interactions with residents.

[5] When employees at Ebensburg Center are "taken off the floor" they are not eligible to work overtime hours. Overtime priority is determined by an "equalization" process whereby employees who more frequently accept overtime opportunities gain priority for future overtime opportunities.

In light of these events, Gustafson contacted District Council 83 director Dominic Sgro ("Sgro") to discuss the handling of her grievance on or about July 7, 2020. During this conversation, Sgro called Gustafson a "free rider" when he became aware she was not a member of AFSCME. He then stated that he would look into her case and get back to her. Complaint at ¶ 51; R.R. at 12a. After not hearing from Sgro for several months, Gustafson called him on or about October 15, 2020, at which time Sgro told Gustafson she was "sponging" off the union, that he "knows what happened," and that Gustafson received "minimal" or "limited" representation because she is a "freeloader." *Id.* at ¶ 53, R.R. at 12a.

Based on the way it handled her grievance, Gustafson believed AFSCME "discriminated against, punished, or otherwise retaliated against [her] because of her decision to be or status as a nonmember of AFSCME." *Id.* at ¶ 58; R.R. at 13a. Accordingly, on September 22, 2021, Gustafson filed a complaint against AFSCME, raising a single cause of action for breach of the duty of fair representation. Gustafson did not raise any claims against the Commonwealth, her employer. In her prayer for relief, Gustafson requested, *inter alia*, compensatory and punitive damages, reasonable attorneys' fees, and requested a trial by jury. Importantly, Gustafson did not request an order directing AFSCME to bring her grievance to arbitration *nunc pro tunc*.

In response, AFSCME filed preliminary objections averring, *inter alia*: (1) demurrer, raising insufficient specificity and legal insufficiency to the claim for damages on duty of fair representation claim; (2) demurrer, raising legal insufficiency to the claim for punitive damages as improper in a duty of fair representation case; and (3) demurrer, raising legal insufficiency to the claim for attorneys' fees and costs as improper in a duty of fair representation case. The trial court granted AFSCME's aforementioned objections,

dismissed their remaining preliminary objections as moot, and dismissed Gustafson's complaint with prejudice.

Gustafson appealed, challenging the trial court's grant of AFSCME's preliminary objection related to her claim for damages on her duty of fair representation claim and dismissal of her complaint. Before the Commonwealth Court, Gustafson argued that she set forth a legally cognizable claim for damages arising out of AFSCME's breach of its duty of fair representation and that the entitlement to relief for such a breach is not limited to a request for *nunc pro tunc* arbitration.

A unanimous, *en banc* panel reversed in a published opinion. *Gustafson v. Am. Fed'n of State, Cty., and Mun. Emp., Council 13*, 310 A.3d 1267 (Pa. Cmwlth. 2024). The Commonwealth Court began by setting forth the relevant law regarding breach of duty of fair representation claims in this Commonwealth. According to the panel, this Court first recognized a cause of action for breach of duty of fair representation in *Falsetti v. Local Union No. 2026, United Mine Workers of America,* 161 A.2d 882 (Pa. 1960), where we stated "[i]f the [u]nion, in processing an employee's grievance, does not act in good faith, in a reasonable manner[,] and without fraud, it becomes liable in damages for breach of duty." *Gustafson*, 310 A.3d at 1270 (quoting *Falsetti*, 161 A.2d at 896). As for the remedy for such a breach, the lower court quoted the Supreme Court of the United States' opinion in *Vaca v. Sipes*, 386 U.S. 171 (1967), where the High Court concluded that "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved. But we see no reason inflexibly to require arbitration in all cases." *Gustafson*, 310 A.3d at 1271 (quoting *Vaca*, 386 U.S. at 196) (emphasis provided by Commonwealth Court removed).

The *en banc* panel proceeded to discuss this Court's application of the breach of duty of fair representation in the PERA context. In doing so, the court first quoted our

opinion in *Ziccardi v. Department of General Services*, 456 A.2d 979 (Pa. 1982), where we held that a "union's refusal to submit a grievance to arbitration does not fall under any of the categories of unfair labor practice enumerated in … PERA" and that "[u]nder *Falsetti*, a member of a bargaining unit has a right to sue his union for failure to proceed to arbitration when the complaint alleges bad faith." *Gustafson*, 310 A.3d at 1271 (quoting *Ziccardi*, 456 A.2d at 980-81) (emphasis provided by Commonwealth Court removed). The appellate court then block quoted our opinion in *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 480 A.2d 242 (Pa. 1984), emphasizing in that case, this Court observed that the complainant "s[ought] to order arbitration," and that "in cases governed by state labor law[,] [the court's] power is limited to that remedy[,]" and that an order to arbitrate "the underlying grievance *nunc pro tunc* provides the employee with a complete and adequate legal remedy." *Gustafson*, 310 A.3d at 1272 (quoting *Martino*, 480 A.2d at 251). The *en banc* panel further highlighted that in *Martino*, we discussed the *Vaca* Court's refusal to mandate arbitration in breach of fair representation cases, noting that an employee may be seeking damages against the union that "an arbitrator may have no power under the bargaining agreement to award" and that, while issues eligible for arbitration may be resolved through litigation of the breach of fair duty claim "[i]t does not follow … that the court should proceed to decide the merits." *Id.* at 1273 (quoting *Martino*, 480 A.2d at 252).

Applying the above legal principles to the facts as pled in Gustafson's complaint, the Commonwealth Court rejected AFSCME's argument that *Martino* demanded affirmance of the trial court's dismissal. According to the court, unlike the claimant in *Martino*, Gustafson did not seek an order directing AFSCME to take her grievance to arbitration *nunc pro tunc*, nor did she ask the court to decide the merits of her underlying grievance. *Id.* Additionally, the court determined Gustafson was not alleging wrongdoing

on the part of the Commonwealth, her employer, but, rather, her claim rested solely on AFSCME's alleged failure "to fairly represent her during a workplace investigation and subsequent grievance proceeding." *Id.* As such, the court determined Gustafson's claim was not an unfair labor practices claim under PERA and thus, it was not free and clear from doubt whether she could proceed on a claim for damages against AFSCME. Accordingly, the appellate court reversed the trial court's order and remanded the matter for further proceedings.

## II. Issues and Standard of Review

We granted AFSCME's petition for allowance of appeal to address the following issues:

(1) Whether the Commonwealth Court's decision below is contrary to this Court's ruling in *Martino v. Transport Workers' Union,* 480 A.2d 242 (Pa. 1984)?

(2) Whether in a duty of fair representation claim, Section 1101.903 of PERA requires arbitration when plaintiff-employee received relief through the grievance process and the action for damages against the union requires the trial court to evaluate what the employee is entitled to under the collective bargaining agreement?

(3) Whether, in a duty of fair representation claim, a public sector employer is an indispensable party when the employee's requested remedy requires the trial court to evaluate what the employee is entitled to under the collective bargaining agreement?

*Gustafson v. Am. Fed'n of State, Cty., and Mun. Emp., Council 13*, 323 A.3d 1267, 1267-68 (Pa. 2024) (*per curiam* order).

As this case comes before us on appeal from the trial court's grant of AFSCME's preliminary objections in the nature of a demurrer, our standard of review

> is *de novo*, and our scope of review is plenary. *See Ladd v. Real Estate Commission,* 230 A.3d 1096, 1103 (Pa. 2020), citing *Mazur v. Trinity Area Sch. Dist.,* 961 A.2d 96, 101 (Pa. 2008). "We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore 'accept as true all well-pleaded,

material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.' A preliminary objection in the nature of a demurrer 'should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.'" Id. (internal citations omitted), quoting *Yocum v. Commonwealth, Pennsylvania. Gaming Control Bd.,* 161 A.3d 228, 234 (Pa. 2017).

*Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020).

### III. Arguments of the Parties

In AFSCME's view, the Commonwealth Court's decision contravenes both PERA and our prior decisions addressing duty of fair representation claims in the public employee context, namely *Martino.* The Unions observe that, pursuant to Section 903 of PERA, "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." AFSCME's Brief at 15 (quoting 43 P.S. § 1101.903). AFSCME asserts Gustafson's duty of fair representation claim arises out of the interpretation of the collective bargaining agreement between AFSCME and the Commonwealth, thus limiting her remedy to requiring AFSCME to arbitrate her grievance *nunc pro tunc* rather than monetary damages. In support of its position that Section 903 controls, AFSCME asserts that its duty of fair representation to Gustafson arises out of the Unions' status as exclusive representative of the employees in the bargaining unit, which it argues exists solely by virtue of Sections 602 and 606 of PERA. *Id.* at 30-31 (citing 43 P.S. §§ 1101.602; 606).

Reinforcing this latter point, *Amicus* Pennsylvania State Education Association ("PSEA") argues Gustafson incorrectly contends her breach of duty of fair representation claim arises out of the common law. Instead, *amicus* asserts a duty of fair representation claim "arises always and only in the context of exclusive representation authority that is provided by statute." PSEA *Amicus* Brief at 3 (citing *Vaca*, 386 U.S. at 177; *Case v.*

*Hazelton Area Educ. Support Personnel Ass'n*, 928 A.2d 1154 (Pa. Cmwlth. 2007); *Felice v. Sever*, 985 F.2d 1221, 1227-28 (3d Cir. 1993)).[6]

Additionally, AFSCME contends Gustafson's claim is based on her assertion that she was entitled to a more advantageous resolution of her grievance under the collective bargaining agreement. Resolution of that claim, and the determination of whether AFSCME's actions actually caused Gustafson any harm, necessarily requires resolution of a dispute arising under the collective bargaining agreement. As such, AFSCME asserts PERA bars Gustafson's claim for damages and limits the remedy for her duty of fair representation claim to an order directing the Unions to arbitrate her grievance *nunc pro tunc*. Additionally, AFSCME emphasizes that since Gustafson's claim is based on her assertion that the Union mishandled her grievance and she was entitled to a more advantageous outcome under the collective bargaining agreement, her claim is based on the Commonwealth's violation of the collective bargaining agreement, requiring it be arbitrated pursuant to Section 903. AFSCME's Reply Brief at 21.

A proper reading of our decision in *Martino*, AFSCME insists, supports its position. AFSCME asserts *Martino* rejected the remedial scheme that developed in the private sector under the federal Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, *et seq.*, and instead held that in a public employee's duty of fair representation claim "the employee's relief under PERA is limited to an order from the chancellor compelling arbitration of the underlying grievance." AFSCME's Brief at 16 (quoting *Martino*, 480 A.2d

---

[6] In addition to PSEA, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, the American Federation of Teachers, the Service Employees International Union, and the United Food and Commercial Workers International Union, the Pennsylvania State Corrections Officers Association, Pennsylvania State Lodge, Fraternal Order of Police, International Association of Fire Fighters, Local Union Nos. 22, 319 and 627, Lackawanna and Lehigh County Deputy Sheriffs Associations, Fraternal Order of Transit Police and Temple University Police Association, and the Association of Pennsylvania State College and University Faculty filed *amici* briefs in support of AFSCME.

at 245).  According to AFSCME, if the arbitrator finds a violation of the collective bargaining agreement during the subsequent arbitration, *Martino* directs that the arbitrator shall apportion any damages remedy between the union and the employer.  In this vein, AFSCME criticizes the Commonwealth Court's reliance on *Vaca* for the proposition that an employee's remedy in a duty of fair representation claim is not limited to arbitration of the underlying grievance.  Per AFSCME, *Martino* explicitly rejected *Vaca*'s reasoning for duty of fair representation claims arising under PERA.  *Id.* at 23 (citing *Martino*, 480 A.2d at 248).  In fact, AFSCME contends *Martino* unequivocally "held that an order compelling arbitration of the grievance *nunc pro tunc* awarded to a successful duty of fair representation plaintiff 'provides the employee with a complete and adequate legal remedy.'"  *Id.* at 24 (quoting *Martino*, 480 A.2d at 248 n.10).  AFSCME insists that this remedial framework for a proven breach of the duty of fair representation is designed to provide the bargaining unit employee "precisely the treatment all the employees in the [bargaining] unit are entitled to under the collective bargaining agreement."  AFSCME's Reply Brief at 7 (quoting *Martino*, 480 A. 2d at 252).[7]

In light of its position that the sole remedy for a public employee's duty of fair representation claim under PERA is arbitration, AFSCME contends that the public employer is an indispensable party in any such action.  AFSCME contends "a party is indispensable when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience."  *Id.* at 41 (quoting *Van Buskirk*

_____

[7] According to AFSCME, the only exception to this rule is when the employee alleges, and ultimately proves, that "the employer actively participated with the union in its bad faith deprivation of the employee's right to protection under the collective bargaining agreement[.]"  AFSCME's Brief at 16 (quoting *Martino*, 480 A.2d at 251 n.16).  Under those circumstances, AFSCME asserts "the court may determine that a damages remedy is appropriate and 'can direct different appropriate apportionment to the backpay liability.'"  *Id.* (quoting *Martino*, 480 A.2d at 251 n.16).

*v. Van Buskirk*, 590 A.2d 4, 7 (Pa. 1991). AFSCME further highlights that in *Martino*, this Court explained that "in a duty of fair representation case where the remedy is an order compelling arbitration, 'the employer approaches the status of an indispensable party to the litigation in the sense that the dispute cannot be finally resolved with equity and good conscience without his participation.'" *Id.* at 42 (quoting *Martino*, 480 A.2d at 245). In AFSCME's view, that the employer is an indispensable party is an unavoidable conclusion since an order compelling arbitration of the underlying grievance would be utterly meaningless if it was directed solely to the union. Only if the employer is a party to the duty of fair representation case can the court order it to participate in arbitration and only if it participates in arbitration can the arbitrator direct it to remedy any contractual violation it is found to have committed. Thus, AFSCME asserts, the public employer's participation is necessary to enable the employee to obtain the only relief permitted under PERA and to resolve the case with equity and good conscience, making it indispensable.

Gustafson retorts that Section 903 does not constrain her remedy to an order directing AFSCME to proceed to arbitration on her underlying grievance *nunc pro tunc* because her duty of fair representation claim arises out of the common law rather than the collective bargaining agreement. As such, Gustafson argues PERA does not apply. She contends our appellate courts have confirmed that PERA does not apply to such actions because they do not constitute an unfair labor practice. Gustafson's Brief at 25 (citing *Case v. Hazelton Area Educ. Support Pers. Ass'n,* 928 A.2d 1154, 1161 (Pa. Cmwlth. 2007)). In Gustafson's view, PERA applies only when arbitration is at issue and not in a tort claim for damages for the union's breach of the duty of fair representation when reinstatement is not involved. According to Gustafson, this Court recognized the duty of fair dealing as a common law cause of action for which a union can be held liable for damages in *Falsetti* when we held "[if] the [u]nion, in processing an employee's grievance,

does not act in good faith, in a reasonable manner and without fraud, it becomes liable in damages for breach of duty." *Id.* at 21 (quoting *Falsetti¸* 161 A.2d at 895 (emphasis provided by Gustafson removed)).

While Gustafson argues her duty of fair representation claim arises out of AFSCME's discriminatory mishandling of her grievance due to her nonmember status, she acknowledges that a court may be required to analyze the underlying grievance during the damages phase of her case. Nevertheless, she asserts that we previously recognized the merits of an underlying grievance pertain only to damages when we noted that "[w]hether there was just cause becomes relevant on the issue of damages, only after bad faith has been shown." *Id.* at 29 (quoting *Ziccardi*, 456 A.2d at 981). Therefore, Gustafson posits that the necessity to analyze the merits of the underlying grievance does not require the court to reopen the grievance by sending it back to arbitration *nunc pro tunc*. Gustafson analogizes her duty of fair representation claim to a legal malpractice claim where courts must analyze the merits of the client's underlying case without reopening the matter. Gustafson further argues that to hold otherwise would require the court to alter the terms of the collective bargaining agreement's arbitration limitations period, for which courts lack the authority.

Her position, Gustafson asserts, is in line with *Martino*, which she insists provides for arbitration when it is the requested remedy and is necessary to make the plaintiff whole but does not alter the common law paradigm when an employee opts to seek a damages remedy from the union. In *Martino*, Gustafson contends, PERA was implicated since the statute applied to the plaintiff's suit in equity against his employer for wrongful discharge. In Gustafson's view, the remedy of *nunc pro tunc* arbitration is appropriate when damages and other court-ordered relief cannot make the employee whole and the only type of remedy that could make the employee whole is one that, under PERA, can be awarded

only through the arbitration process. She insists that this is not the case here, because she is not seeking reinstatement or other equitable relief but, rather, is seeking to be made whole via damages from AFSCME for breach of its duty. In response, AFSCME asserts the relief sought by an employee is not determinative of the relief to which the employee is entitled. In its view, a duty of fair representation plaintiff does not get to decide whether and when arbitration of a dispute is mandatory pursuant to Section 903 merely through the relief sought. Section 903, AFSCME stresses, makes arbitration mandatory even if the employee attempts to seek different relief. AFSCME's Reply Brief at 21.

Finally, as she insists a public employee is not limited to seeking the equitable relief of *nunc pro tunc* arbitration for a union's breach of its duty of fair representation, Gustafson maintains that a public employer is not necessarily an indispensable party to such a claim. According to Gustafson, "[i]f the employee is not seeking reinstatement or arbitration, and is only seeking damages from the union for an alleged breach of its duty of fair representation, then the employer does not approach the status of an indispensable party." *Id.* at 15-16 (quoting *Pa. Soc. Servs. Union v. Lynn*, 677 A.2d 371, 374 (Pa. Cmwlth. 1996)). In her view, if a public employee seeks to be made whole via damages from the union, the public employer is not required to be joined as a party in order for the employee to obtain relief. In other words, Gustafson argues a public employer's involvement in an employee's duty of fair representation claim against a union is dependent on the relief the employee is seeking. If the employee is seeking arbitration or reinstatement the employer may be an indispensable party, but if, as is the case here, the employee is merely seeking damages from the union, then the employer is not indispensable.[8]

---

[8] Gustafson rejects AFSCME's contention that a public employee can only seek damages in a duty of fair representation claim if the employee alleges, and ultimately proves, collusion between the employer and the union. In her view, allegations of collusion (continued…)

**IV. Discussion**

The Supreme Court of the United States first recognized individual employees' right to equitable relief against their union for breaches of the duty of fair representation in *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192 (1944). *Martino* 480 A.2d at 246 n.9. Then, in *Falsetti*, this Court held that "[i]f the [u]nion, in processing an employee's grievance, does not act in good faith, in a reasonable manner and without fraud, it becomes liable in damages for breach of duty." 161 A.2d at 895 (footnote omitted). Subsequent to *Falsetti*, the Supreme Court in *Vaca* observed that "it is now well established that, as the exclusive bargaining representative of the employees in [employee's] bargaining unit, the [u]nion had a statutory duty fairly to represent all of those employees, both in its collective bargaining with [the employer] … and in its enforcement of the resulting collective bargaining agreement." 386 U.S. at 77 (citing, *inter alia*, *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953); *Humphrey v. Moore*, 375 U.S. 335 (1964)). We further explained that a union owes this duty of fair representation to all members of the bargaining unit it is certified to serve, union members and non-members alike. *See Falsetti*. at 895 n.21 (a union breaches its duty if it "refuse[s] to press a justifiable grievance either because of laziness, prejudice or **unwillingness to spend money on behalf of employees who [are] not members of the union**." (internal quotations and citation omitted; emphasis added)).

Also, in *Falsetti*, we noted that "[a] union's duty of fair representation is founded upon the … relationship between the union and its members, as well as the duty imposed upon the union by state and federal labor statutes." 161 A.2d at 895 n.21. According to *Vaca*, a union's "statutory authority to represent all members of a designated unit includes

---

between the union and the employer are necessary only if the employee is seeking damages from the employer. Gustafson's Brief at 42 (citing *Speer v. Philadelphia Housing Authority*, 533 A.2d 504, 506 (Pa. Cmwlth. 1987)).

a statutory obligation to serve the interest of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S at 177. Further, when an employee alleges a union breached its duty of fair representation by failing to arbitrate the employee's grievance "the employee's action is based on the employer's alleged breach of [the collective bargaining agreement] plus the union's alleged wrongful failure to afford him his contractual remedy of arbitration." *Vaca*, 386 U.S at 196. As to an employee's remedy for a union's breach of its duty of fair representation, the *Vaca* Court stated "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved. But we see no reason inflexibly to require arbitration in all cases." *Id.; see also Falsetti*, 161 A.2d at 895 ("[i]f the [u]nion, in processing an employee's grievance, does not act in good faith, in a reasonable manner and without fraud, **it becomes liable in damages for breach of duty**." (emphasis added) (footnote omitted).

The aforementioned cases, in addition to other federal matters which discussed a union's duty of fair representation and an employee's corresponding remedy for said breach, arose under federal labor law, specifically the LMRA. *See Martino*, 480 A.2d at 245-46. Public employees in the Commonwealth, however, are not governed by the LMRA. *See* 29 U.S.C. §§ 142(3); 152(2), (3). Rather, PERA is the pertinent statute. *See* 43 P.S. §§ 1101.301(1), (2). As such, cases discussing a union's duty of fair representation and an employee's right to sue for breach of that duty under federal labor law "are instructive, [but] they are not authoritative" in Pennsylvania cases involving public employees, unions representing those public employees, and public employers, which are not controlled by federal labor law. *Id.* at 249.

That said, in *Ziccardi*, we held that a public employee union's refusal to submit a grievance to arbitration was not an unfair labor practice under PERA and applied *Falsetti's*

holding that "a member of a bargaining unit has a right to sue his union for failure to proceed to arbitration when the complaint alleges bad faith" in the PERA context. *Ziccardi*, 456 A.2d at 330.[9] Similar to their federally regulated counterparts, public sector unions' duty of fair representation is derived from their statutory authority as the exclusive representative of all members of the bargaining unit the unions have been selected to represent. *See* 43 P.S. §§ 1101.602; 606. Therefore, even though PERA does not specifically mention a claim for breach of the duty of fair representation, such a claim certainly arises out of PERA in the public employee context. Contrary to the assertions made in the dissent, we are not suggesting that a public employee union's duty of fair representation arises out of the collective bargaining agreement. *See* Dissenting Op. at 10. The duty itself "is founded upon the … relationship between the union and its members, as well as the duty imposed upon the union by" PERA. Falsetti, 161 A.2d at 895 n.21. It is the **breach** of that duty, as the High Court explained in *Vaca*, that arises, at least partially, out of the collective bargaining agreement when the breach is based on the union's failure to arbitrate the employee's grievance. *See Vaca*, 386 U.S. at 196. Additionally, unions representing public employees' duty of fair representation extends

---

[9] In *Ziccardi*, this Court appears to have misstated the relevant facts underlying *Falsetti*, noting in that case, we "held that a public employee's remedy for his bargaining agent's refusal to submit a grievance to arbitration is an action against the union for damages for breach of its duty of fair representation." 456 A.2d at 329-30. *Falsetti*, however, did not involve a public employee but instead involved a former coal company employee who sued his former union, Local No. 2026, United Mine Workers of America, and his former private employer, Pittsburgh Consolidated Coal Company. Our determination of whether PERA limits public employees' relief for their unions' breach of the duty of fair representation, therefore, does not impact the continued applicability of *Falsetti's* holding in the private sector context. While *Falsetti* did not involve a public employee or employer, we did apply the duty of fair representation in such a context in *Ziccardi* and courts of this Commonwealth have subsequently continuously applied this same duty to unions representing public-sector employees. Here, neither of the parties argue that public sector unions do not have such a duty.

equally to union and non-union members alike. *Pa. Labor Rels. Bd. v. Eastern Lancaster Cnty. Educ. Ass'n*, 427 A.2d 305, 307 (Pa. Cmwlth. 1981).

While we have adopted the federally recognized duty of fair representation and corresponding cause of action for the breach of such duty in the public employee context in Pennsylvania, we have departed from the federal approach to an employee's remedy for a union's breach of its duty. As discussed above, the Supreme Court in *Vaca* stated that "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved. But we see no reason inflexibly to require arbitration in all cases." 386 U.S at 196. In explaining its reasoning, the High Court continued:

> [i]n some cases, for example, at least part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union. In other cases, the arbitrable issues may be substantially resolved in the course of trying the fair representation controversy. In such situations, the court should be free to decide the contractual claim and to award the employee appropriate damages or equitable relief.

*Id.* Notably, this Court did not find this reasoning persuasive and explicitly rejected it in *Martino* because it "would entrust resolution of the merits of the underlying grievance to the court rather than the arbitrator[.]" 480 A.2d at 248. The reason for our rejection of the analysis articulated in *Vaca* was based primarily on the disparate ways in which the LMRA and PERA approach arbitration of labor disputes. Under the LMRA, arbitration of labor disputes is permitted, and federal case law encourages it. *Id*. at 248 n.10. PERA, on the other hand, does not just encourage arbitration of labor disputes but affirmatively mandates it pursuant to Section 903. 43. P.S. §1101.903 ("Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory.").

Along these same lines, we have previously recognized the distinction between the statutes' different approaches, explaining PERA's arbitration policy "is even stronger than that embodied in federal labor policy. Federal policy merely favors the submission of disputes to arbitration, while the PERA requires it." *Bd. of Educ. v. Phila. Fed. Of Teachers*, 346 A.2d 35, 39 (Pa. 1975) (internal citations omitted). With this distinction and PERA's arbitration mandate in mind, we concluded in *Martino* that if a public employee proves the union breached its duty of fair representation, the court of common pleas, sitting in equity, "may, under proper circumstances, order the union and employer to arbitrate the aggrieved employee's grievance" *nunc pro tunc* and that such an outcome "provides the employee with a complete and adequate remedy." 480 A.2d at 251. We further concluded that in cases governed by PERA, *nunc pro tunc* arbitration is the only available remedy for the court of common pleas in cases where a union breaches its duty of fair representation. *Id.* at 252. In rejecting our interpretation of *Martino* and adopting *Vaca's* position that "[t]he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach[,]" Dissenting Op. at 21 (quoting *Vaca*, 386 U.S. at 195), the dissent fails to address the significant difference in the approaches to arbitration taken by PERA and its federal counterparts and *Martino's* express rejection of the reasoning in *Vaca*.

Turning to the matter at issue, we find that there are significant differences between *Martino* and the present case. Importantly, unlike the employee in *Martino*, Gustafson filed her present complaint solely against AFSCME and not the Commonwealth, her employer. Additionally, Gustafson does not seek equitable relief of reinstatement or arbitration of her underlying grievance, but, rather, seeks to be made whole exclusively through money damages from AFSCME. That said, these differences do not alter the

application of our reasoning in *Martino*.[10]  Under the plain language of PERA, whether arbitration is mandatory is not based on the party the employee files suit against or the relief the employee seeks.  Specifically, per Section 903, "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."  43 P.S. § 1101.903.  Thus, the requirement of arbitration is based on whether the dispute arises out of the interpretation of the collective bargaining agreement between the union and the employer and not, as Gustafson and the dissent contend, on the remedy sought by the employee.

A thorough review of Gustafson's complaint evinces that her dispute with AFSCME falls within Section 903's arbitration mandate.  Gustafson alleges AFSCME violated its duty of fair representation "by failing to fairly represent her during the investigation and processing of her grievance[.]"  Complaint at ¶ 54; R.R. at 12a.  Specifically, Gustafson accuses AFSCME of "failing to try to help [her] or otherwise represent her in connection with the workplace investigation[,]" "failing to adequately pursue or protect her interest in

---

[10] The dissent's reliance on the fact that the employee in *Martino* sought *nunc pro tunc* arbitration rather than monetary damages from the union is misplaced.  *Martino's* rejection of *Vaca's* more flexible approach did not rely on the remedy sought by the employee.  Instead, we focused on the fact that "PERA makes arbitration of all disputes arising under public sector collective bargaining agreements the exclusive remedy for unresolved grievances[.]"  *Martino*, 480 A.2d at 249.  Likewise, the dissent's position that *Martino* should be limited to the principle "that an employee who sues their union for breaching its duty of fair representation in handling a grievance is limited to the remedy of arbitration *nunc pro tunc* only when that employee seeks reinstatement for being discharged without just cause under the relevant [collective bargaining agreement] and the union fails to process the related grievance[,]" Dissenting Op. at 13, is not supported by *Martino's* holding.  *Martino* held that "[o]nce it has been determined that the union breached its duty of fair representation, the Court of Common Pleas sitting in equity ma[]y order the completion of the arbitration procedure and, **in cases governed by state labor law its power is limited to that remedy**."  480 A.2d at 252.  (emphasis added).  By its own language, *Martino* applies to all cases governed by state labor law, *i.e.* PERA, and is clearly not limited in the manner proposed by the dissent.

the processing or resolution of her grievance[,]" "failing to communicate with [her] regarding the grievance or to consult with or otherwise inform her of its status and on its resolution[,]" and "preventing [her] from appealing or otherwise challenging the grievance resolution." *Id.* at ¶¶ 64-67; R.R. at 13a-14a. At the heart of Gustafson's complaint is her assertion that the grievance resolution agreed to by AFSCME was inadequate and she was entitled to a more advantageous outcome under the collective bargaining agreement. *See id.* at ¶¶ 42-46; R.R. at 11a.

Gustafson acknowledges that the trial court may be required to analyze the merits of her underlying grievance but insists that analysis would only relate to what damages she is entitled to from AFSCME. Gustafson's Brief at 23 ("[A]lthough the merits of the underlying grievance might have to be examined by the trial court, they would be considered only through the lens of damages."); *id.* at 29 ("[T]he merits of the grievance may need to be examined, but only to assess the value of the claim."). The dissent similarly acknowledges that under its paradigm the trial court "would be required to examine the underlying grievance in assessing damages if [Gustafson] were to successfully prove that AFSCME breached its duty in handling her grievance." Dissenting Op. at 19-20. The fact that the court would only be required to analyze the merits of the underlying grievance in determining damages is of no moment. The necessity to analyze the merits of the underlying grievance at any stage of the proceedings would "entrust resolution of the merits of the underlying grievance to the court rather than the arbitrator[.]"[11] *Martino*, 480 A.2d at 248. Assumption of this role by the court is impermissible pursuant to Section 903's arbitration mandate. Gustafson's claim "is based

---

[11] Section 903's arbitration mandate also makes Gustafson's and the dissent's legal malpractice analogy inapt. There is no statutory corollary to Section 903 that mandates that a client's case precipitating the filing of a malpractice action be arbitrated. The fact that courts may regularly analyze the merits of an underlying case in the legal malpractice arena does not nullify Section 903's arbitration mandate in the public employee context.

on [the Commonwealth's] alleged breach of [the collective bargaining agreement] plus [AFSCME's] alleged wrongful failure to afford [Gustafson her] contractual remedy of arbitration." *Vaca*, 386 U.S. at 198. *See also Waklet-Riker v. Sayre Area Educ. Ass'n*, 656 A.2d 138, 140 (Pa. Super. 1995) (Finding the essence of the employee's claim was the terms and conditions of the collective bargaining agreement and the failure by the employer and the union to follow those terms. Thus, the court determined the dispute arose out of the interpretation of the collective bargaining agreement and PERA controlled what relief was available). We therefore conclude that when a public employee's claim for a union's breach of its duty of fair representation stems from the union's alleged mishandling of a grievance, the claim constitutes a "dispute … arising out of the interpretation of the provisions of a collective bargaining agreement" and the employee's remedy from the court is limited to an order directing the underlying grievance be arbitrated *nunc pro tunc*. 43 P.S. § 1101.903.[12,13]

Finally, in directing our attention to AFSCME's third issue, we note that it is well-established that an employee does not have a right to bring an equity action against an employer for breach of a collective bargaining agreement or for a union's failure to take a grievance to arbitration. *Ziccardi*, 456 A.2d at 981; *Martino*, 480 A.2d at 243. Instead, as explained above, the employee's avenue to relief is to file an equity action against the

---

[12] Our holding does not address scenarios where the union's purported breach of its duty of fair representation stems from circumstances other than its alleged mishandling of an employee's grievance or when the employee alleges conspiracy or collusion between the union and the employer, as those are not the cases currently before us.

[13] We are not unsympathetic to the dissent's concern that our holding could embolden unions to "engag[e] in discriminatory behavior against employees on the basis of their union membership status, or, indeed, based upon other protected attributes like race, sex, or religion." Dissenting Op. at 14. That concern, however, does not permit us to ignore the plain language of Section 903's arbitration mandate. To the extent our General Assembly shares the dissent's concerns, it is free to amend PERA to remove such claims from arbitration.

union for breach of its duty of fair representation, as Gustafson did here. *Falsetti*, 161 A.2d at 896; *Ziccardi*, 456 A.2d at 981; *Martino*, 480 A.2d at 243-44. In light of this, and our conclusion that PERA limits a public employee's relief to an order compelling *nunc pro tunc* arbitration of the underlying grievance, we must now determine whether the public employer is a necessary and indispensable party to the employee's claim against the union.

We have previously stated that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 581 (Pa. 2003) (quoting *Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988)). A party is further indispensable when it "has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience." *Van Buskirk v. Van Buskirk*, 590 A.2d 4, 7 (Pa. 1991) (quoting *Hartley v. Langkamp and Elder*, 90 A. 402, 403 (Pa. 1914)).

In *Martino*, we stated that in cases where a public employee seeks arbitration of an underlying grievance, "the public employer approaches the status of an indispensable party to the litigation in the sense that the dispute cannot be finally resolved with equity and good conscience without his participation." 480 A.2d at 245. Subsequent to *Martino*, our courts have retained public employers as an indispensable party in employees' breach of duty of fair representation cases against their unions after dismissing the direct claims against the employer "so that the remedy of arbitration, if warranted, may be completely and adequately enforced." *Casner v. Am. Fed'n of State, Cnty., and Mun. Emp.*, 658 A.2d 865, 867 (Pa. Cmwlth. 1995); *see also, e.g., Garzella v. Borough of Dunmore*, 62 A.3d 486, 493 (Pa. Cmwlth. 2013), *Reisinger v. Commonwealth, Dept. of Corrections*, 568 A.2d 1357, 1361 (Pa. Cmwlth. 1990), *Krenselak v. Canon-McMillan School Dist.*, 866 A.2d 346,

348 (Pa. Cmwlth. 1989); *but see Lynn*, 677 A.2d 371 (finding the public employer was not an indispensable party in an employee's breach of duty of fair representation action against the union where the employee alleged collusion between the union and the employee, did not seek arbitration or reinstatement, and merely sought money damages from the union).

In *Reisinger*, the public employer agreed it could be joined in an employee's breach of duty of fair representation claim against the union "solely for the purpose of implementing an order granting relief by way of compelling arbitration." 568 A.2d at 1361. We concur that a public employer's presence is necessary when an employee's remedy is limited to an order compelling arbitration of the underlying grievance *nunc pro tunc* as an order directing arbitration solely against a union would be toothless, as a union cannot arbitrate the grievance against itself. In this regard, the public employer's participation is essential in ensuring that the dispute between the employee and the union is resolved with equity and good conscience. Thus, in such cases, the public employer not only approaches the position of an indispensable party but becomes an indispensable party.

Moreover, contrary to Gustafson's insistence, limiting a public employee's remedy to *nunc pro tunc* arbitration does not immunize the union for its breach. While we rejected *Vaca's* remedy analysis for public employee claims for breach of duty of fair representation under PERA in *Martino, supra*, we were persuaded by the Supreme Court's analysis in *Bowen v. U.S. Postal Service*, 459 U.S. 212 (1983), that "an employer who wrongfully discharges an employee protected by a collective bargaining agreement containing an arbitration clause, is only responsible for backpay that accrues prior to the hypothetical date upon which an arbitrator would have issued an award had the employee's union taken the matter to arbitration." *Martino*, 480 A.2d at 248-49. When the union wrongly failed to proceed to arbitration, according to *Martino*, *Bowen* held that the union was responsible

for the backpay owed to the employee subsequent to that hypothetical date. *Id.* We concluded that, "[i]n the absence of an apportionment providing meaningful sanctions against the union, incentive to comply with the grievance procedure would be diminished." *Id.* at 251. Consistent with our reasoning in *Martino*, and contrary to the dissent's attempt to dismiss *Martino's* discussion of apportionment as mere *dicta*, if a court orders an employee's underlying grievance to be arbitrated *nunc pro tunc* due to the union's breach of its duty of fair representation, the arbitrator is required to determine the merits of the employee's grievance and apportion damages, if any, between the employer and the union in accordance with their respective responsibility. *See Martino*, 480 A.2d at 252.

**V. Conclusion**

Gustafson's claim against AFSCME for the union's breach of its duty of fair representation stems from AFSCME's alleged mishandling of Gustafson's grievance against the Commonwealth. As such, under PERA, her remedy is limited to an order from the court compelling AFSCME and the Commonwealth to arbitrate her grievance *nunc pro tunc*. In order to facilitate this relief, if warranted, the Commonwealth, as Gustafson's employer, is an indispensable party to her action. The order of the Commonwealth Court is thus reversed.

Justices Dougherty, Wecht and McCaffery join the opinion.

Justice McCaffery files a concurring opinion.

Chief Justice Todd files a dissenting opinion in which Justices Donohue and Brobson join.